FRUGÉ, Judge.
The plaintiff, Mr. E. H. Gilson, filed suit against the Continental Casualty Company to recover commissions allegedly due him in connection with a policy of sickness *821 and accident insurance issued by the defendant to Northwestern State College at Natch-itoches and covering the students at that institution. The plaintiff alleges that the ■Continental Casualty Company is a nonresident insurance company doing business within the State of Louisiana and that ■the plaintiff was retained by the company as an insurance agent and was to be paid a •commission of fifteen percent on all sales ■made by him. The plaintiff further alleges that through his efforts the Continental Casualty Company received the bid for a group accident and sickness policy ■covering the students at Northwestern Louisiana State College, but that the defendant has paid only five percent of the premiums received by it. Thus, in this suit the plaintiff demands the additional ten percent commission which he alleges is owed him by the defendant, plus damages for embarrassment and humiliation which the plaintiff alleges that he suffered because of his reliance on the anticipated commission.
The defendant, in its answer, denied that the plaintiff sold or had any connection with the selling of the group accident and sickness policy to the college and averred that the negotiations which culminated in the sale of the policy were conducted directly between the college and the defendant without the aid or intervention of the plaintiff.
The trial judge, without assigning reasons for his decision, rendered judgment in favor of the defendant and dismissed the plaintiff’s suit. From this adverse judgment below, plaintiff has appealed to this court.
The facts are not in serious dispute. Each academic year, Northwestern State College, on the basis of the lowest bidder system, secures for its students who wish to participate, a program of accident and sickness insurance. The plaintiff, a resident of Natchitoches, Louisiana, is an insurance agent who, in the past, has represented several companies, including the defendant, in submitting bids in an effort to secure the student coverage. The record discloses that in January, 1965, the plaintiff wrote to the company and informed them of the college’s invitation for bids for the forthcoming academic year. The bids on an accident policy were to be submitted by March, 1965. The company provided plaintiff with copies of its proposed policy and indicated its desire to submit a bid to the college. Another insurance company not involved in this suit was the low bidder for the accident policy, but it was subsequently discovered that that company’s proposed policy did not meet the specifications desired by the college. Consequently, the bid was rejected and the college asked that the companies submit new bids by July, 1965. On the second round of bidding, the college decided that the interest of its students would best be served by a policy covering both accident and sickness. Continental Casualty Company submitted the low bid on the second round and, with only minor modifications, the defendant’s policy was accepted and approved by the college. As noted above, the company paid Mr. Gilson a commission amounting to five percent of the premiums that it received. The defendant justified this reduction in commission on the grounds that the plaintiff was actually the agent of the institution and not of the company, and that since no agency designation was made on the specifications and since no agent submitted a second request for bids, the defendant decided to design a quotation on the basis of a five percent commission, thus allowing the defendant to submit a lower bid. To this contention the plaintiff avers that he was and is the agent of Continental Casualty Company and not of Northwestern State College, and that defendant, Continental Casualty, has no right to reduce his commission in order to submit a lower bid without first notifying him of the change.
With regard to the .agency relationship of the plaintiff, we note with interest that Mr. Gilson is registered under the provisions of our insurance code as the duly authorized *822 agent for Continental Casualty Company.[1] Offered as exhibits by the plaintiff are numerous letters between Mr. Gilson and Mr. Donald A. Smith and Mr. Edward C. Linck, Managers of the New Orleans Branch Offices. The tone of these communications indicates to this court that they were written by the company to their local agent, Mr. Gilson, in connection with the first round of bidding on the student accident policy. The company contends, however, that because the coverage was changed on the second round of bidding and because the college’s request to the company that it bid in the second round did not come through the agent but came directly from the college, Mr. Gilson was not acting as the company’s agent in his efforts to secure the bid for Continental Casualty. In support of this contention, Continental Casualty offered as defendant’s Exhibits 1 and 2 letters concerning the bidding in tire second round, which were exchanged directly between Dudley G. Fulton, Dean of Students at the college, and Mr. Linck, representative of the company. We do not deem this conclusive, however, in view of Dean Fulton’s testimony that the letters inviting bids are always sent directly to the companies, because in most cases the college does not know the identity of the local agent at the time the bids are requested (Tr. 70). We also note that in almost every instance of correspondence between the company and the college, a carbon copy was sent to Mr. Gilson as the local agent. Dean Fulton further testified that to the best of his knowledge Mr. Gilson was the person who presented the plan offered by Continental Casualty (Tr. 66), and that after Continental’s bid had been accepted, Mr. Gilson prepared at his own expense brochures designed to promote the sale of the policy to the individual students.
In a sample of the policy which was written by Continental Casualty for the college, the company makes these representations with regard to the handling of student claims:
“Continental’s student insurance plan is-handled' by your personal representative. * * * You receive local processing of' your claims by a man who is thoroughly familiar with the details of the plan and’ its operation. He, in turn, works in close-cooperation with the student insurance-staff of Continental Casualty Company’s-Special Risks Division, located in the Company’s New Orleans Branch Office.”"
Filed in the record are agent’s copies of' claim checks sent by the company to the-claimant through its local agent in conformity with the company’s representations in the policy. The agent’s name typed; at the bottom of each of these checks is that of the plaintiff, Mr. E. H. Gilson. Mr. Gil-son testified under oath that the aforementioned copies of claim checks represented': the first semester covered by Continental's-policy and that they were sent by the company directly to him and then forwarded! by him to the student involved (Tr. 34). He-further testified that after the college’s-rejection of the lower bidder on the first round, he worked closely with the representatives of the college until it was determined that Continental Casualty would be the company which would be invited to-write the policy for the college, after which he was instrumental in ironing out some small discrepancies between the coverage desired by the college and that submitted by the company (Tr. 44).
Though the defendant urges that throughout these negotiations Mr. Gilson, was acting as the agent of the college and not of the company, we feel that the events connected with the first and second rounds of bidding as reflected by the record before us demonstrate conclusively that Mr. Gil- *823 ■son was the agent and authorized representative of Continental Casualty Company -and that he acted in the company’s behalf •throughout that period. We are not convinced by the defendant’s argument that Mr. Gilson was the agent of the college in view of his qualification as an agent for ■Continental Casualty under the provisions •of R.S. 22:1161 supra and his actions and •efforts to obtain the student accident and sickness policy for the defendant. We hold ■that the agency relationship between the ■plaintiff and the defendant continued uninterrupted throughout the period of time involved in this litigation.
Having decided that the plaintiff and the defendant were bound by an agency relationship, we now proceed to the question •of whether the plaintiff is entitled to a fifteen percent commission on the accident and sickness policy covering the students at Northwestern State College. The plaintiff testified that some three years ago a representative of the company contacted him by telephone and inquired about the plaintiff’s willingness to represent the Continental Casualty Company on college and •other educational business. At that time the parties discussed a commission of fifteen percent on this type of policy (Tr. 42). From the time of that original contact until the present, the plaintiff did not write any policies with Continental Casualty Company and consequently had no occasion to receive commissions from them. The plaintiff offered in evidence a commission schedule furnished him by the company, in which it is stated that fifteen percent commissions shall be paid on new and renewal student accident or accident and sickness policies. A footnote in the schedule provides that the schedule is not to be regarded as a contract in itself. The plaintiff further related that in correspondence and telephone conversations with the company representatives no amount of commission was discussed and that, “When I contacted them first about it, they sent me the forms and then we talked on the phone and I asked them was there any — would this be handled just like it’s been before, and they said yes.” (Tr. 44.)
. The above communications between the plaintiff and the defendant occurred prior to the March, or first round of bidding. There was no direct communication thereafter between the plaintiff and defendant concerning commissions until after the July bidding, in which the defendant, having the low bid, was asked to submit a specimen policy for the college’s approval. As we mentioned above, some minor details of the submitted policy did not meet the specifications of the college and the plaintiff and Dean Fulton contacted Mr. Linck, the representative of the company, in order to adjust these slight differences. The communication was made by telephone from Dean Fulton’s office and both the plaintiff and Dean Fulton spoke to Mr. Linck. The policy changes were made and some discussion about the agent’s contract ensued. The plaintiff testified that he asked Mr. Linck' if he [Mr. Linck] should send him [the plaintiff] a one-case contract on this business and that Mr. Linck replied, “Your regular contract will be sufficient.” (Tr. 45.) Mr. Linck, the company’s New Orleans manager, confirmed that the telephone conversation occurred and that Mr.' Gil-son asked about the necessity of a one-case contract. He testified that his reply, as well as he could remember it, was “No, that is not necessary. If you are the agent of the schopl on this business, you are the agent and that is all there is to it.”
From this and other testimony of the parties to this suit, we are convinced that after the original discussion concerning commissions some three years prior to Mr. Gilson’s obtaining the policy in question, nothing further was said or done between the parties on this subject. In an effort to explain the réduction in commission, Mr. Linck stated in a reply letter to the plaintiff’s demand for the additional ten percent commission that after all bids were rejected on the first round, the company had the case rated by their underwriters on fifteen *824 percent, ten percent and five percent commission rates and that after the rates had been computed, the company decided to submit the bid as computed on the basis of a five percent commission to effect a lower premium cost (Plaintiff’s Exhibit 4). This explanation was reiterated by Mr. Linck on the witness stand (Tr. 84). It is not contested by the defendant that if Continental Casualty had received the bid on the March round of bidding, then the plaintiff would have been entitled to a fifteen percent commission in accordance with the commission schedule which they furnished him and their original verbal agreement.
Thus, in essence, the defendant, without contacting its agent, decided to reduce the agent’s commission in order to submit a more competitive bid on the student policy. It is our view that such a unilateral modification of the contract between an agent and his principal is contrary to the principles expressed in our Civil Code and cannot be sanctioned under our law. La. Rev. Civil Code Arts. 1901 and 3022; see also Couch on Insurance 2d, § 26:373 et seq.; 44 C.J.S. Insurance § 162; 3 C.J.S. Agency §§ 175-195; Am.Jur. “Insurance”, § 170 et seq.
We are therefore of the opinion that the plaintiff is entitled to recover from the defendant an additional ten percent commission on the policy of student accident and sickness insurance procured by Continental Casualty Company through the efforts of its agent, the plaintiff herein;
In addition to the ten percent commission, the plaintiff asks this court to award him damages against the defendant for embarrassment and humiliation caused by the defendant’s failure to pay the full commission. A careful examination of the record fails to disclose adequate evidence on which this court might grant such an award, and we therefore reject as unsupported the plaintiff’s demand for additional damages.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is hereby rendered in favor of the plaintiff, E. H. Gilson, and against the defendant, Continental Casualty Company, in the sum of One Thousand Eight Hundred Sixty-three and 34/100 Dollars ($1,863.34), together with legal interest from the date of judicial demand until paid. The cost of all proceedings are to be borne by the defendant.
Reversed and rendered.

. R.S. 22:1161 provides: “An insurance agent is hereby defined to be an individual who is a resident of this state, or whose principal office is in this state * * * authorized in writing by any insurer authorized to transact business in- this state, to act as its representative with authority to solicit, negotiate and effect contracts-of insurance in its behalf * *